IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC, <br> as Broadcast Licensee of the May 2, 2015 <br> "The Fight of the Century" Floyd <br> Mayweather, Jr. v. Manny Pacquiao <br> Championship Fight Program, <br><br>   Plaintiff, <br><br> v. <br><br> 1) ENOLA INVESTMENTS, L.L.C., <br> individually, and d/b/a TEA'ZE <br> DAIQUIRI LOUNGE; et al. <br><br>   Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § Civil Action No. 4:17-cv-02893 <br> § <br> § <br> § <br> § <br> § <br> § |

## JOINT PRETRIAL ORDER

1. APPEARANCE OF COUNSEL

 (i) Party: J&J Sports Productions, Inc.  – Plaintiff
   Counsel: Andrew R. Korn, Esq.
      David M. Diaz, Esq.
   Address: The Korn Diaz Firm
      4221 Avondale Avenue
      Dallas, Texas 75219
   Telephone: (214) 521-8800
   Email: ddiaz@kbdtexas.com
      akorn@kbdtexas.com

 (ii) Party: Enola Investments, L.L.C.  – Defendant
      Tiffaney Enola Small – Defendant
   Counsel: Trevor McCann
      Law Office of Trevor Brandt McCann
   Address: 1595 Sunnyvale Avenue #17
      Walnut Creek, California 94597

JOINT PRETRIAL ORDER
n:\804170\JPTO

                   Page 1

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 2 of 28

Telephone:   (925) 270-7058
Email:       trevor@tbmclaw.com

2.   STATEMENT OF THE CASE

PLAINTIFF:  Plaintiff alleges that Defendants violated the Communications Act of 1934, as amended, specifically 47 U.S.C. §§ 553 and 605 by intercepting, misappropriating, televising, divulging or otherwise exhibiting the closed-circuit telecast of the May 2, 2015 "The Fight of the Century" Floyd Mayweather, Jr., v. Manny Pacquiao Championship Fight Program, including undercard and preliminary bouts (the "Event") and exhibiting the Event in Defendants' commercial establishment, Tea'ze Daiquiri Lounge ("Establishment") without obtaining authorization or license from Plaintiff, who owned the exclusive license for such exhibition.

DEFENDANTS:   Defendants admit they exhibited the Event in the Establishment. Defendants admit they they did not have authorization or license from Plaintiff to show the Event at the Establishment. However, Defendants deny they violated the Communications Act of 1934 or 47 U.S.C. §§553 and 605, because neither provision applies to internet streaming of the Event.  Defendants deny that they "willfully" (as the term is used in the statute) violated 47 USC Section 553.

3.   JURISDICTION

This Court has jurisdiction over the parties in this action because Defendants' principal place of business is in Texas and for the reason that Plaintiff alleged that Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 in Texas.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

4.   MOTIONS

There are currently no motions pending with the Court.

5.   CONTENTIONS OF THE PARTIES

PLAINTIFF:

A.   Plaintiff contends that Defendants violated the Communications Act of 1934, as amended, specifically 47 U.S.C. §§ 553 and 605 by intercepting, misappropriating, televising, divulging or otherwise exhibiting the closed-circuit telecast of the Event in Defendants' commercial establishment, without obtaining authorization or license from Plaintiff, who owned the exclusive license for such exhibition.

B.   Plaintiff contends that the Communications Act is a strict liability statute. *See e.g.*:

- *J&J Sports Prods. v. Bustillos*, 2018 U.S. Dist. LEXIS 203136, at *6 (S.D. Tex. Nov. 30, 2018) (Hoyt, J.) (47 U.S.C. § 605 is a "strict liability statute").

- *J&J Sports Prods. v. Bros. 5 Entm't Grp. LLC*, 2018 U.S. Dist. LEXIS 169404, at *6 (S.D. Tex. Sep. 28, 2018) (Hittner, J.) ("The FCA is a strict liability statute, meaning the plaintiff, as exclusive licensee, only needs to show that the satellite transmission was broadcast in the defendant's establishment without the plaintiff's authorization.").

- *J&J Sports Production, Inc. v. Roli's Auto Sales, Inc.*, 2016 U.S. Lexis 170622, at *4 (S.D. Tex. Nov. 10, 2016) (Morgan, Mag.) ("On its face, the FCA is a strict liability [*8] statute.").

- *J&J Sports Prods. v. Giuseppe's Bistro, LLC*, 2015 U.S. Dist. LEXIS 44736, at *12 n.7 (E.D. La. Apr. 6, 2015) (47 U.S.C. § 553 is a "strict liability statute").

- *Joe Hand Promotions, Inc. v. Texas 411 Corporation*, *Order* [Doc. 31], at p. 7-9 (S.D. Tex. Dec. 13, 2012) (Hittner, J.) ("In relation to civil liability, the FCA is a strict liability statute, meaning that Joe Hand, as licensee, need only show that Defendants showed the Event at Copa Cabana without authorization... because the FCA is a strict liability statute, courts have recognized that any access of a protected communication, without proper authorization is violation. Therefore, Defendants' contention that the broadcast was accessed for free via the internet is of no legal import.'').

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 4 of 28

C.    Plaintiff contends that authorization from anyone else other than Plaintiff is not authorization. Any and every unauthorized showing of a pay-per-view event is a violation of the Communications Act. *See Joe Hand Promotions, Inc. v. Texas 411 Corporation, Order* [Doc. No. 31], at p. 4, 8-9 (S.D. Tex. December 13, 2012) (Hittner, J.):

> [B]ecause the FCA is a strict liability statute, courts have recognized that any access of a protected communication, without the proper authorization is a violation. Therefore, Defendants' contention that the broadcast was accessed for free **via the internet** is of no legal import... Even assuming that Defendants did stream the video live from the internet, it is common knowledge that downloading or streaming materials from the internet does not ensure that the downloaded or streamed media is legally obtained.

*See also, Nat'l Satellite Sports, Inc. v. Garcia*, 2003 U.S. Dist. LEXIS 10315, at *3 n.2 (N.D. Tex. June 18, 2003) (Fitzwater, J.) ("A tape-delayed broadcast without authorization is still a violation of the FCA.").

D.    Plaintiff contends that as an alcohol license holder, Defendant Enola Investments, LLC is liable under the Communications Act, for exhibition of the Event. *See Joe Hand Promotions, Inc. v. Texas 411 Corporation, Order* [Doc. 31] (S.D. Tex. Dec. 13, 2012) (Hittner, J.) at p. 9, Citing *Joe Hand Promotions, Inc. v. Roberson Management, Inc.*, 2006 U.S. Dist. LEXIS 56237, at *2-3 (S.D. Tex. Aug. 10, 2006) (Ellison, J.); *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d at 754 (S.D. Tex. 2014) (Harmon, J.).

E.    Plaintiff contends that Defendant Smalls, the owner and/or operator of the Establishment and the managing member of the entity owning the Establishment, has a right and ability to control the Establishment and a direct financial interest in the activities of the Establishment which is sufficient to impute liability under the Communications Act. *See, e.g. J&J Sports Prods. v. Bandera Cowboy Bar LLC*, 2016 U.S. Dist. LEXIS 58603, at * 11-14 (W.D. Tex. May 2, 2016) (Ezra, J.).

G.    Plaintiff claims that any and every unauthorized showing of a pay-per-view event, including an "authorized" showing from a commercial

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 5 of 28

account, is a violation of the Communications Act, if the authorization did not come from Plaintiff. *See, e.g. Joe Hand Promotions, Inc. v. Ol' River Hideaway, LLC,* 2016 U.S. Dist. LEXIS 16729, at *6-8 (W.D. Tex. February 11, 2016) (Ezra, J.).

H.   Plaintiff contends that Defendants acted willfully pursuant to Section 605 of the Communications Act. *See e.g.*:

> *J&J Sports Prods. v. Bandera Cowboy Bar LLC*, 2016 U.S. Dist. LEXIS 58603, at * 10-11 (W.D. Tex. May 2, 2016) (Ezra, J.):
>
> Since Plaintiff was the exclusive licensor of the Event, a commercial establishment needed Plaintiff's authorization to receive the broadcast. Therefore, in order for an unauthorized commercial establishment to receive the scrambled signal, there must be some type of wrongful action to intercept and unscramble the signal such as an unauthorized decoder or satellite access card. After all, scrambled satellite signals do not unscramble themselves. Curiously, despite arguing no evidence exists that they intercepted the decoded signal, Defendants submit evidence in the same breath that "a customer [used] his own equipment that was brought into the bar" that enabled the Establishment to broadcast the Event. The fact that a patron, and not Defendants, may have intercepted the signal is an irrelevant fact for purposes of avoiding liability because Section 605 is a strict liability statute.
>
> *See also, J&J Sports Prods. v. Giles*, 2018 U.S. Dist. LEXIS 79492, at *8-9 (N.D. Tex. May 11, 2018) (Boyle, J.):
>
> J&J presents no evidence demonstrating Defendants willfully violated the FCA, but insists they could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. Id. Courts have generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events and because it would be unlikely for an establishment to intercept such broadcasts by chance... the Court likewise concludes that

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 6 of 28

J&J's evidence and allegations are sufficient to support a finding of willfulness.

- *KingVision Pay-Per-View, Ltd. v. Valles*, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendants that such interception could not be had for free.").

- *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (When finding willfulness, the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain.  Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems".)

I.   Plaintiff elects statutory damages pursuant to 47 U.S.C. § 605, or alternatively § 553, of the Communications Act. The Communications Act provides an aggrieved party the option to elect statutory damages. This option is a considerable benefit to an aggrieved party, especially when actual damages are difficult to calculate. *See e.g.:*

- *Capitol Records, Inc. v. Thomas-Rasset*, 799 F. Supp. 2d 999, 1004-1005 (D. Minn. 2011); *KingVision-Pay-Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 966 (N.D. Ill 2000) (Statutory damage scheme is intended to ensure that a plaintiff does not lack a damage remedy for a proven violation of the Cable Act in situations where damages may be difficult or impossible to quantify).

- *J&J Sports Prods. v. Crawford*, 2012 U.S. Dist. LEXIS 130003 at *11 (W.D. Tex. July 31, 2012) (Martinez, J.) ("According to the liberal language of 605(e)(3)(C)(i)(II), the amount of damages to be awarded is within the sole discretion of the trial court, so long as the award falls within the prescribed range.").

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 7 of 28

- *Kingvision Pay-Per-View Corp. v. Ramirez*, 2006 U.S. Dist. LEXIS 59486 at *7-8 (S.D.N.Y. Aug. 11, 2006) (Court's may, but do not have to estimate an offender's profits when arriving at a damages award).

DEFENDANTS:

A.    Defendants deny they violated the Communications Act of 1934 or 47 U.S.C. § 553 and § 605. S*ee Defendant Tiffaney Small and Enola Investments, L.L.C.'s Answer to Complaint and Demand for Jury Trial* [Doc. 13] and *Defendants' Notice of Motion and Motion for Summary Judgment* [Doc 21] (solely as to § 553).

B.    If this Court finds that Small violated § 553, this Court should award statutory damages under a rubric that comports with Congressional policy–not an arbitrary, subjective approach.

C.    The Fifth Circuit has held that 47 USC Section 553 is not a strict liability statute. *See J & J Sports Productions, Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 347 (5th Cir. 2014).

D.    J & J seeks statutory damages under the Act, so it is helpful to understand the bases for statutory damages schemes.

Congress has given three general policies for statutory damages laws. The first is to encourage aggrieved plaintiffs to vindicate their rights. *See*, *e.g.*, Parker v. Time Warner Entm't Co., 331 F.3d 13, 22 (2nd Cir. 2003) (noting that statutory damages provisions of the Cable Privacy Act seek "to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws"). Congress also established guaranteed minimum damages to encourage access to the courts. *See*, *e.g.*, Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 436 (5th Cir. 2000) (noting that statutory damages under the Truth in Lending Act of 1968, 15 U.S.C. § 1640(a)(2)(A), encourage private attorneys general to police disclosure compliance) and Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995) (holding that statutory damages under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(3)(B), provide adequate incentive for an individual plaintiff to

bring suit on his own behalf). Moreover, attorneys' fee provisions make litigation more attractive to potential plaintiffs.

Second, statutory damages provisions can expedite lawsuits because statutory damages do not require the same level of proof as actual damages. *See* Perrone, at 436 (explaining that "statutory damages under the Truth in Lending Act of 1968 are reserved for cases in which damages caused by violation are small or difficult to ascertain"). At times, statutory damages are expedient because the damages can be hard to quantify or prove. *See* Douglas v. Cunningham, 294 U.S. 207, 209 (1935) (explaining that statutory damages under the Copyright Act of 1909 "give the owner of a Copyright some recompense for injury due to him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits"). In other cases, simplifying plaintiffs' proofs is offered as yet another incentive to bring a lawsuit. *See* F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952) (noting that statutory damages under the Copyright Act are permissible when the calculation of actual damages would involve auditing the plaintiff's entire company).

Third, many statutory damages laws include a punitive purpose. *See* Davis v. The Gap Inc., 246 F.3d 152, 172 (2nd Cir. 2001) ("The purpose of punitive damages–to punish and prevent malicious conduct–is generally achieved under the Copyright Act through the provisions of 17 U.S.C. § 504(c)(2)"); J & J Sports Productions, Inc. v. Can's Bar & Grill, 2015 WL 3605662, at *6 (E.D.N.Y., June 5, 2015) (noting that enhanced damages under § 605 are "analogous to punitive damages in that they are designed to deter others from similar infringing activity").

Section 553(c)(3)(A)(ii) provides, "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." The First Circuit Court of Appeals, the only appellate court to have considered the purpose of this provision, determined that statutory damages are "merely an alternative to actual damages" and should be "based on the estimated value of the services stolen, without consideration of other harms… or of other policies favoring deterrence." Charter Commc'ns Entm't I v. Burdulis, 460

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 9 of 28

F.3d 168, 181 (1st Cir. 2006) (quoting <u>Comcast of Mass. I, Inc. v. Naranjo</u>, 303 F.Supp.2d 43, 48 (D.Mass.2004)). That is, statutory damages serve a compensatory function.

This Court should award J & J damages according to its Rate Card.

Despite ascertainable damages–and not including speculative damages–J & J will argue that it is entitled to a higher statutory award to account for purported "damages to their goodwill and reputation" and serve as a deterrent to future signal pirates.

Concerning the former argument, an Alabama District Court recently commented on another serial signal piracy plaintiff's similar tactic: "Curiously, even after electing statutory damages, [plaintiff]'s principal brief on summary judgment reels off a litany of purported actual damages, including… loss of business opportunities and goodwill… [Plaintiff] cannot obtain both types of damages, and its election is binding." <u>Joe Hand Promotions, Inc. v. Windham</u>, 2017 WL5906037 at fn. 4 (S.D. Ala. Nov. 29, 2017). Moreover, Courts reject such requests because they "unsupported by case law" and dismiss the damages as "speculative." *See* <u>J & J Sports Productions, Inc. v. Monte Limar Sports Bar, Inc.</u>, 2017 WL 933079, (E.D.N.Y. Mar. 8, 2017); <u>J & J Sports Productions, Inc. v. El Sonador Café Rest. Inc.</u>, 2017 WL 598534, (E.D.N.Y. Jan. 3, 2017).

As to the deterrence argument, a Pennsylvania District Court in <u>Joe Hand Promotions, Inc. v. Yakubets</u>, 3 F.Supp. 261 (2014)–relying on *Naranjo-Burdulis*–thoroughly discredited it. Since Small dedicates so much of this memorandum to correcting "sound bite" caselaw citations that have resulted in bad law, Small cites <u>Yakubets</u> at length for the Court's consideration:

"Several reasons support evaluating statutory damages as an estimate of actual damages and not increasing them as a penalty or deterrent.

First, nothing in the actual or statutory damages subsections, § 553(c)(3)(A)(i) and (ii), suggests that deterrence is an appropriate decisional factor. Instead, according to the plain

language of the statute, statutory damages are merely an alternative to actual damages. The statute creates no difference between the two. Thus, although it is possible to conclude that the statutory damages provision is intended to allow a court to impose greater damages than available under the actual damages provision, 'the plain language offers no identified reason to reach that conclusion.'

Second, § 553's overall structure favors weighing deterrence under the enhanced damages provision and not under the statutory damages provision. As the First Circuit Court of Appeals explained in [Burdulis], Congress addressed the need for deterrence in other statutory provisions. Section 553(c)(2)(A), for example, allows a court to impose an injunction on defendants, thus preventing future violations. Congress similarly focused on deterrence in enacting § 553(c)(3)(B), which authorizes enhanced damages for certain willful conduct. With the existence of these separate provisions addressing deterrence, there was no need for Congress to ask courts to address the issue when determining statutory damages. The threat of criminal liability under § 553(b) for willful violations also acts as both a general deterrent and a specific deterrent, as certain types of repeat offenders face increasingly stiff penalties. Section 553's language and structure suggest no reason to assume that Congress expected courts to double count deterrence by factoring it first into an actual or statutory damages award and then again into an enhanced damages award... The cases [Plaintiff] cites offer no convincing reasoning to the contrary.

[Plaintiff]'s invocation of deterrence depends in part on its view that 'Congress has equated a violation of the statutes to theft of service.' This perspective is misleading. While Congress enacted § 553 to combat cable piracy... the statute creates different penalties based on different mental states. Willful violations of § 553(a)(1)'s prohibition can subject violators to criminal penalties, 47 U.S.C. § 553(b), and additional, so-called 'enhanced damages,' By contrast, actual and statutory damages are awarded without any showing of *mens rea,* or even if the conduct is merely negligent. Further, '[i]n any case where the

court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100,'— a sum which may be considerably less than what the court would otherwise have to impose. As a whole, § 553 plainly does not equate violation of § 553(a)(1) with piracy or theft. In fact, the deterrence rationale makes less sense with respect to negligent misconduct than intentional or willful misconduct, but statutory damages do not require intent or willfulness.

Finally, as the court pointed out in [Naranjo] the consideration of deterrence in awarding statutory damages, 'when carried through to its full implications,... leads to absurd results' because under that theory, an aggrieved party may receive as statutory damages premiums to deter future conduct in addition to actual or estimated actual damages. Statutory damages, however, may not exceed $10,000. As a result, parties that have suffered large actual damages (greater than $10,000) cannot receive any deterrence premiums. But if any violators require an additional deterrence premium, it is those who have caused the largest amounts of harm.

For these reasons, the Court holds, in accordance with the *Naranjo-Burdulis* approach, that statutory damages under § 553(c)(3)(A)(ii) 'should be calculated based solely on an estimate of actual damages,' without considering deterrence. This interpretation also 'best satisfies the command of the statute and the judicial interest in promoting predictability and transparency.'"

Yakubets, at 275-77 (internal citations and footnotes omitted).

The Yakubets Court did acknowledge that at least one District Court, Comcast of Illinois X, LLC. v. Toguchi, 2008 WL 360682 (N.D.Ill. Feb. 11, 2008), disagreed with the *Naranjo-Burdulis* approach. However, the Yakubets Court determined that the subjective "fact specific analysis" that Toguchi proposed "***leaves courts (and litigants) lost at sea***." *Id.*, at 277-78 (emphasis added).

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 12 of 28

Based on the Congressional policy and the *Naranjo-Burdulis* approach, if this Court finds that Small violated § 553, this Court should award $3,000 in statutory damages to J & J.

E.   Because Small's conduct was not "willful" within the context of the § 553, this Court should deny an "enhanced" damages award.

In considering the applicability of punitive damages, the Supreme Court has held that, "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is ***so reprehensible*** as to warrant the imposition of further sanctions to achieve punishment or deterrence." State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003) (emphasis added). Courts nationwide have held that "enhanced" damages under the Communications Act are analogous to punitive damages. *See* Can's Bar & Grill, at *6. Therefore, the question is whether Small's conduct was ***so reprehensible*** that it requires punishment and deterrence in addition to any compensatory damages.

A.   "Enhanced Damages" under the Act: § 553(c)(3)(B)

Section § 553(c)(3)(B) provides:

"In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000."

Here, Small admitted that the Establishment received the Program for customers' viewing pleasure, therefore, to award enhanced damages this Court need only determine whether the "violation was committed willfully."

Courts nationwide generally interpret the phrase "violation was committed willfully" in one of two ways; the first interpretation heeds the rules of statutory construction and furthers Congressional intent; the second interpretation wholly disregards those rules and creates ***per se*** liability.

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 13 of 28

1. Congress intended that enhanced damages be imposed on violators who knew what they were doing.

Congress' inclusion of the term "willfully" in § 553(c)(3)(B) stands in stark contrast to the term's exclusion from § 553(c)(3)(A(ii), the strict liability statutory damages provision discussed *supra*. The <u>Yakubets</u> Court considered the presence/absence of the term "willfully" in the § 605's damages subsections and determined that while "[t]here is no mens rea or scienter elements" to impose liability under the statutory damages provision, "***a particular state of mind is required for enhanced damages***." <u>Yakubets,</u> at 274 (emphasis added); *accord* <u>Joe Hand Promotions, Inc. v. Easterling</u>, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009) ("Intent is immaterial to liability, but intent is relevant to the calculation of plaintiff's remedies with regard to augmented amounts for liquidated damages for willful violations.").

The Supreme Court has not considered the definition of "willful" or the "particular state of mind" required to impose enhanced damages under § 553, but at least three Circuit Courts have. It is to those cases that Small now turns to illustrate the differences between EI's ignorant conduct and the "willful" conduct that implicates § § 553(c)(3)(B).

2. Circuit Courts have defined the term "willful" under the Act.

The Seventh Circuit first addressed the issue in <u>ON/TV of Chicago v. Julien</u>, 763 F.2d 839 (7th Cir. 1985) which concerned the grant of a permanent injunction against the defendant. In <u>Julien</u>, the defendant "sold kits and instructions for assembling "pirate" [] decoders" for at least 15 months; with each kit the defendant included a "disclaimer" of his liability for any violation of § 605; the defendant advertised that the kit enabled a purchaser to violate the plaintiff's property rights; and the defendant charged $175 per kit on a non-refundable "cash only" basis. <u>Julien</u>, at 840-842. While the defendant's conduct was certainly "for direct private financial gain," the Court questioned whether it was "willful" under § 605.

Lacking a definition for the term "willful" in the context of § 605, the Circuit Court adopted a definition pronounced by the

Supreme Court in <u>Trans World Airlines v. Thurston</u>, 469 U.S. 111 (1985); "willful" in a civil case, the Supreme Court said, was conduct that "showed a disregard for the governing statute and an indifference to its requirements." <u>Julien</u>, at 843 *citing* <u>Trans World Airlines</u>, at 126-127. Ultimately, the Circuit Court found that "overwhelming evidence" existed on which the "ultimate trier of fact could easily find that [the defendant] willfully and knowingly assisted the unauthorized interception of protected communications." <u>Id.</u>

In 1990, the Eleventh Circuit issued its opinion in <u>Cable/Home Communications, Corp. v. Network Productions</u>, 902 F.2d 829 (11th Cir. 1990), and citing <u>ON/TV</u>, adopted the definition of "willful." The Circuit Court expounded facts substantially similar to those in <u>ON/TV</u>; defendants sold "pirate chips" for at least one year; one defendant testified that "[u]sing a pirate chip is totally illegal[;]" "with knowledge of the potential legal consequences, [defendant] pursued his publicity and sale of pirate chips[;]" the defendants "became interested in a method to "break the VCII and [violate § 605];" and the defendants held seminars to teach others how to violate § 605. <u>Cable/Home</u>, at 834-837.

The Circuit Court had "no difficulty" finding the defendants' flagrant conduct violated § 605 and affirmed the enhanced damages award. <u>Id.</u>, at 852-853.

In 2007, the Eighth Circuit heard the appeal in <u>Comcast of Illinois X v. Multi-Vision Electronics</u>, 491 F.3d 938 (2007). There, the Court cited <u>Cable/Home</u> and, in the context of § 553, adopted the definition of "willful" pronounced in <u>Trans World Airlines</u>. And again, the facts of <u>Multi-Vision</u> differed little in substance with those in <u>ON/TV</u> and <u>Cable/Home</u>; for 14 years, the defendant advertised and sold "pirate" decoders nationwide; the defendant included a "disclaimer" of his liability for violations of § 553; the defendant charged substantial sums (up to $318) per decoder and reported millions of dollars in revenue; and, the defendant was a repeat offender who had faced an identical lawsuit nine years prior in 1994. <u>Multi-Vision</u>, at 941-942.

In affirming the enhanced damages award, the Court found that the defendants "were aware of [§ 553]'s prohibitions but nonetheless

sold boxes to customers they knew would steal cable services." Id., at 947.

Common among all three Circuit Court cases is the defendants' **actual knowledge** of the applicable statute and the defendants' actual knowledge that their conduct violated the statute. Compare, now, the Circuit Court cases with <u>Trans World Airlines</u>, the case from which the definition of "willful" was adopted.

<u>Trans World Airlines</u> concerned the defendant's simultaneous efforts to bring its employment policies into compliance with the recently-amended Age Discrimination Employment Act (the "ADEA") and observe an existing collective-bargaining agreement with the plaintiffs' union. Before instituting its compliance plan, the defendant sought legal advice and consulted with the plaintiffs' union, and the defendant's attorney never informed the defendant that the plan violated the ADEA. <u>Trans World Airlines</u>, at 129-130. Despite the defendant's efforts, the compliance plan did, in fact, violate the ADEA. The plaintiffs sued for compensatory damages as well as "liquidated damages" for a "willful violation." (Here, the ADEA's "liquidated damages" are analogous to "enhanced damages.")

The plaintiffs argued that an employer's conduct is willful if he is "cognizant of an appreciable possibility that the employees involved were covered by the ADEA." But the Court was "unpersuaded by the [plaintiffs'] argument that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA." Id., at 128. Instead, the Court considered reasonable the lower court's finding that "a violation of the Act was 'willful' if 'the employer… knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA'" Id., at 126-27 (internal footnotes omitted). It was according to this rubric that the Court found, "There was simply no evidence that [the defendant] acted in a 'reckless disregard' for the requirements of the ADEA… It is reasonable to believe that the parties involved, in focusing on the larger overall problem, **simply overlooked** the challenged aspect of the new plan." Id., at 130 (emphasis added).

<u>Trans World Airlines</u> teaches that "willful" does not mean mere "careless" or "negligent" conduct or "possibly" or "potentially"

unlawful acts. The standard is higher. In the context of § 553 and § 605, the Circuit Courts found the defendants' conduct to be "willful" where those defendants had actual knowledge of the law and ***affirmatively decided to violate it***.

3. The term "willful" has been rendered meaningless in the context § 553(c)(3)(B).

Today, the term "willfully" within "violation was committed willfully" is meaningless. Courts award enhanced damages almost as a matter of course, not because defendants intended to violate signal piracy laws, but merely because "[t]he broadcast of an event without authorization is a deliberate act, and this establishes willfulness." J & J Sports Prods., Inc. v. Welch, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010). However, the fundamental flaw with the Welch approach is that, "If mere violation of [signal piracy laws] were per se willful, then there would be no difference between statutory damages and any willful enhancement." J & J Sports Productions, Inc. v. Guzman, 2009 WL 1034218, at *3 (N.D.Cal. Apr. 16, 2009). Nonetheless, Welch's flawed reasoning persists, and it is the misapplication of Time Warner Cable of N.Y. v. Googies Luncheonette, Inc., 77 F.Supp. 485 (S.D.N.Y. 1999) that gave rise to the approach embodied in Welch.

4. Googies: Good Law Misapplied

The corruption of § 553(c)(3)(B) is due, in large part, to five words plucked from Googies–"signals do not descramble spontaneously"–which courts routinely repeat without regard for the facts that underlie them or their applicability to individual cases. Time Warner Cable of N.Y. v. Googies Luncheonette, Inc., 77 F.Supp. 485, 490 (S.D.N.Y. 1999). Because courts have cited, discussed, examined, or mentioned Googies in nearly 15% of the signal piracy-related cases since 1999 available on Westlaw, the case is significant and deserves review here.

In Googies, the plaintiff, a cable services provider, sued several defendants for unauthorized receipt of cable television services. Because the plaintiff provided the physical means (i.e., cable wire, decoder box, and electronic transmission) to access its network,

absent a "pirate decoder," it was ***physically impossible*** for the defendants to view plaintiff's programming without plaintiff's authorization. It was based on those facts that the Court found, "signals do not descramble spontaneously." <u>Googies</u>, at 490.

Unlike the <u>Googies</u> plaintiff, J & J cannot credibly or unequivocally claim that those it sues engaged in unlawful conduct because J & J relies on third-party television service providers to transmit the program to those parties' customers. Therefore, with no need for J & J's involvement in transmission, simple mistakes by television service providers or their customers can result in unauthorized receptions. It happened with Small. And the same is true of the defendants in <u>J & J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.</u>, 751 F.3d 346 (5th Cir. 2014), <u>J & J Sports Productions, Inc. v. Perr's Pub, Inc.</u>, 2017 WL 4841476 (E.D. Mich. Oct. 26, 2017), and <u>J & J Sports Productions, Inc. v. Coyne</u>, 857 F.Supp. 2d 909 (2012). In each of those cases, the Court found that the defendant did not willfully violate Federal law, nor did the signal descramble spontaneously. Instead, the Courts found that mistake or simple negligence, by the defendant or a third party, explained the unauthorized receptions.

But, given the chance in default matters, signal piracy plaintiffs, like JHP, perpetuate the ***myth*** that every defendant ***must have acted with intent*** to violate the plaintiffs' property rights when they declare that "to the best of my knowledge our programming is not and cannot be mistakenly, innocently, or accidentally intercepted." And Courts accept those declarations as true and cite to <u>Googies</u> because that is the one-sided guidance that plaintiffs provide.

Section 553 is a strict liability statute. But for too many years, plaintiffs and Courts have conflated the elements of statutory and enhanced damages and effectively eliminated any real distinction between their respective purposes. In <u>Perr's Pub, Inc.</u>, the_ Court succinctly differentiated § 605's damages provisions:

> "The internal structure of § 605 provides some information regarding Congress's intent in authorizing enhanced damages for 'willful' violations. Specifically, the damages portion of § 605 identifies three categories of violators.

First, there are violators who act willfully and for the purpose of commercial advantage. Those violators may be liable for damages up to $100,000 (but not less than $10,000).

Second, there are violators who did not act willfully, who may be liable for damages of up to $10,000 (but not less than $1,000).

And, third, there are what me be termed 'oblivious' violators who were 'not aware and had no reason to believe that [their] acts constituted a violation of this section.' 605(e)(3)(C)(iii). Those violators may be found liable for damages of $250.

The existence of the first category of violators strongly suggests that Congress did not intend for violators who were *negligent* in the violation of the statute to be "willful" violators. Rather, that distinction–*between individuals who should have known better and individuals who naively violated the statute*–is reflected in the second and third categories."

Perr's Pub, Inc., at *5 (emphasis added); *accord* Yakubets, at 290-291.

J & J will likely argue that enhanced damages are warranted because Small and EI are "repeat offenders" and charged a $10 cover. However, Small and EI received the Program on May 2, 2015 before J & J filed suit in the first matter. In such instances, Courts have routinely denied claims that defendants were "repeat offenders." *See* Guzman, at *3 (Court recognized service of summons and complaint as putting defendant on notice of illegal behavior). Moreover, since EI ordinarily collected cover charges regardless of whether EI provided entertainment, the cover charge has no bearing on the question of willfulness.

In Trans World Airlines, the Supreme Court cautioned that a "broad standard proposed by the [plaintiffs] would result in an award of double damages in almost every case... Both the legislative history

and the structure of the statute show that Congress intended a two-tiered liability scheme." <u>Trans World Airlines</u>, at 128. Not surprisingly, the broad standard that evolved from <u>Googies</u> and default judgments has corrupted § 553's three-tiered damages scheme.

Small and EI's conduct was, at worst, negligent in failing to properly inform Ei's employees. Enhanced damages are not warranted based on the facts of this matter. This Court should deny J & J any enhanced damages award.

6.  ADMISSIONS OF FACT [1]
    A.  Defendant Enola Investments, L.L.C. held the license/permit issued by the Texas Alcoholic Beverage Commission for the Establishment located at 1975 Texas Pkwy, Missouri City, TX 77489.[2]

---

[1] *See J&J Sports Prods. v. Bandera Cowboy Bar LLC,* 2016 U.S. Dist. LEXIS 58603, at *12-14 (W.D. Tex. May 2, 2016) (Ezra, J.) (Citations omitted):

In this case, Defendant McGroarty has admitted to all the necessary elements to establish vicarious liability. First, he admits that he had "the right to supervise the activities of the Establishment on the date of the Event." Second, Defendant McGroarty has admitted the other elements to impose vicarious liability by failing to specifically deny allegations in his answer. Plaintiff expressly alleges in paragraph three of its complaint that McGroarty: (1) held the license/permit issued by the Texas Alcoholic Beverage Commission for the Establishment, located at 305-07 11th Street, Bandera, Texas 78003;(2) owned and/or operated the Establishment;(3) had a right and ability to supervise the activities of the Establishment; and(4) had an obvious and direct financial interest in the activities of the Establishment. "McGroarty only responded to these allegations in his answer with the sentence "[a]dmit that the individual was an officer of the entity owning the establishment." The Federal Rules of Civil Procedure are clear that "a party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." "An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.". In this case, McGroarty failed to directly respond to any of the four allegations made in paragraph three of the complaint. The Court finds that responding to the four allegations by admitting only that he was an officer of the entity that owned the Establishment was not a denial that "fairly respond[ed] to the substance of the allegation," as a denial must. **Here, because McGroarty did not specifically deny the allegations made in paragraph three of the complaint, those allegations are deemed admitted."**).

[2] Compare *Plaintiff's Original Complaint* [Doc. 1] at ¶ 2 with *Defendant Tiffaney Small and Enola Investments, L.L.C.'s Answer to Complaint and Demand for Jury Trial* [Doc. 13] at p. 1.

B.   Defendant Enola Investments, L.L.C. owned and/or operated the Establishment.[3]

C.   Defendant Enola Investments, L.L.C. had a right and ability to supervise the activities of the Establishment.[4]

D.   Defendant Enola Investments, L.L.C. had an obvious and direct financial interest in the activities of the Establishment.[5]

E.   Defendant Tiffaney Enola Small was an owner and/or manager of the Establishment.[6]

F.   Defendant Tiffaney Enola Small was an officer and/or owner of the entity owning the Establishment.[7]

G.   Defendant Tiffaney Enola Small had a right and ability to supervise the activities of the Establishment.[8]

H.   Defendant Tiffaney Enola Small had an obvious and direct financial interest in the activities of the Establishment.[9]

I.   Defendants did not, nor did anyone else on Defendants' behalf, order the Event for the Establishment from Plaintiff.

J.   Defendants did not, nor did anyone else on Defendants' behalf, pay a licensing fee to for the Event for the Establishment to Plaintiff.

---

[3] *See id.*

[4] *See id.*

[5] *See id.*

[6] Compare *Plaintiff's Original Complaint* [Doc. 1] at ¶ 3 with *Defendant Tiffaney Small and Enola Investments, L.L.C.'s Answer to Complaint and Demand for Jury Trial* [Doc. 13] at p. 1

[7] *See id.*

[8] *See id.*

[9] *See id.*

K.     Defendants broadcasted the Event in the Establishment.[10]

L.     The Establishment was a commercial establishment that was open to the public on the date of the Event.[11]

M.     The Event was shown in the Establishment on May 2, 2015.[12]

N.     A portion of the Event was shown in the Establishment on May 2, 2015.[13]

O.     The entire Event, including all undercard or preliminary bouts, was shown in the Establishment on May 2, 2015.[14]

P.     One of the undercard or preliminary bouts for the Event included the fight between Gamalier Rodriguez and Vasyl Lomachenko.

Q.     Defendants did not receive authorization or permission from Plaintiff, nor did Defendants enter into an agreement with Plaintiff, to show the Event in the Establishment.

R.     On May 2, 2015, the Establishment required its patrons or clientele to pay a cover charge or other fee to enter the Establishment's premises.

S.     On the date of the Event, Defendant  Enola Investments, L.L.C. was the entity that owned the Establishment.

T.     Defendant Enola LLC's owner(s) benefitted financially from the Establishment's profits on the date of the Event.

U.     Defendant Tiffaney Enola Small was an owner of the Establishment on the date of the Event.

---

[10] *See Tiffaney Small's Declaration in Support of Motion for Summary Judgment* [Doc. 21-3].

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

V.     The persons at the Establishment serving as bartenders, waiters/waitresses, and/or the manager, acted as agents on Defendants' behalf on the date of the Event.

W.     The television monitors within the Establishment existed for the viewing pleasure of the Establishment's patrons on the date of the Event.

X.     On the date of the Event, there were multiple televisions (including a large screen projector) within the Establishment.

Y.     On the date of the Event, all of the television monitors within the Establishment exhibited or broadcasted the Event.

Z.     The Establishment exhibited television programming that is believed to be of interest to the Establishment's patrons.

AA.    On May 2, 2015, the Event was exhibited or broadcast at the Establishment for Defendants' financial gain.

BB.    Defendants did not designate any portion of the Establishment to be excluded from the licensed premises that is subject to the alcohol license or permit.

CC.    No portion or area of the Establishment is excluded from the alcohol license or permit that has been issued for the Establishment.

DD.    Defendants intentionally exhibited or broadcast the Event at the Establishment.

EE.    Defendant Small neglected to instruct the Establishment employees on the need to purchase commercial licenses to receive and publish Pay-Per-View programming , including the Event, at the Establishment. Defendant Small admits this was a mistake and takes responsibility for it.

FF.    The establishment seen in the Auditor's Video is the Establishment Enola Investments, L.L.C., individually, and d/b/a Tea'ze Daiquiri Lounge, located at 1975 Texas Parkway, Missouri City, Texas 77489.

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 23 of 28

GG.  The establishment seen on the Auditor's Photo is the Establishment Tea'ze Daiquiri Lounge, located at 1975 Texas Parkway, Missouri City, Texas 77489.

HH.  On May 2, 2015, the Establishment was in good condition.

II.  On May 2, 2015, the Establishment was located in an urban area.

JJ.  The seating capacity for the Establishment on the date of the Event was 75.

KK.  Plaintiff and Defendants are the correct parties to this suit.

7.  CONTESTED ISSUES OF FACT

(a)  How Defendants obtained the broadcast of the Event. Defendants contend they displayed the Event via internet streaming. Plaintiff does not know how Defendants obtained the signal for the Event.

(b)  The amount of any statutory and enhanced damages to be awarded.

8.  AGREED PROPOSITIONS OF LAW

A.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 605 and venue is proper pursuant to 28 U.S.C. § 1391(b).

B.  This Court has jurisdiction over this matter and the parties to this cause.

C.  This case is governed by the Communications Act of 1934, as amended, by statutes 47 U.S.C. § 553 or § 605.

D.  If successful, Plaintiff is entitled to recover its attorneys' fees and the amount of attorneys fees to be awarded to Plaintiff against Defendants, jointly and severally, pursuant to 47 U.S.C. §§ 553 and/or 605.

E.  If successful, Plaintiff is entitled to recover its full costs to be awarded to Plaintiff against Defendants, jointly and severally, pursuant to 47 U.S.C. §§ 553 and/or 605

9.    CONTESTED PROPOSITIONS OF LAW

  (a)    Whether Defendants internet streaming of the Event to exhibit the
         Event in the Establishment violated the Federal Communication Act
         of 1934 for the unauthorized interception and broadcast of the Event,
         under either 47 U.S.C. § 553 or 47 U.S.C. § 605.

  (b)    47 U.S.C. § 553 § 605 of the Communications Act are strict liability
         statutes.

10.   EXHIBITS

  (i)    Plaintiff's Exhibit List is attached (2 copies).

  (ii)   Defendants' Exhibit List will be filed separately.

11.   WITNESSES

PLAINTIFF:

| No. | WITNESS AND ADDRESS / TELEPHONE | NARRATIVE | ESTIMATED DURATION |
|-----|--------------------------------|-----------|--------------------|
| 1.  | Tiffaney Enola Small c/o Trevor McCann Law Office Of Trevor Brandt McCann 1595 Sunnyvale Avenue, #17 Walnut Creek, CA 94597 (925) 270-7058 – Telephone | Tiffaney Enola Small was a manager, officer, director and/or owner of the entity owning the Establishment on the night of the Event.  Defendant may have knowledge of all matters relating to this lawsuit, including how the Event was telecast in the commercial establishment, the number of persons in the establishment viewing the unauthorized | 1.5 hours |

| | | transmission of the telecast, profits made by Defendants, goods sold by Defendants, cover charge, if any, and means and methods of pirating the telecast of the Event. | |
|---|---|---|---|
| 2. | Bartender (Unknown Name) (described as: black female, approximately 5'5", 21-25 years old, 120 lbs., black hair, wearing a black shirt. Tattoo visible on her chest near left shoulder.). c/o Tea'ze Daiquiri Lounge 1975 Texas Parkway Missouri City, TX 77489 (281) 989-8301 – Telephone | Employee of Defendants may have knowledge of all matters relating to this lawsuit, including how the Event was telecast in the commercial establishment, the number of persons in the establishment viewing the unauthorized transmission of the telecast, profits made by Defendants, goods sold by Defendants, cover charge, if any, charged by Defendants to enter the Establishment, the advertisement of the Event at the Establishment, and the means and methods of pirating the telecast of the Event. . | Call if need arises |
| 3. | Curtis Giese c/o Law Offices of Thomas P. Riley, P.C. 1114 Freemont Avenue South Pasadena, CA 91030 (626) 799-9797 | Mr. Giese has knowledge that Defendants broadcast the Event in their commercial establishment, the number of televisions exhibiting the Event, and the number of patrons viewing the Event. | 30 min. |
| 4. | Thomas P. Riley Law Offices of Thomas P. | Mr. Riley may testify regarding the license | 1 hour |

Case 4:17-cv-02893   Document 32   Filed in TXSD on 01/02/19   Page 26 of 28

|   |   |   |   |
|---|---|---|---|
|   | Riley, P.C.<br>Attorney-In-Fact for J&J Sports Productions, Inc.,<br>1114 Freemont Avenue<br>South Pasadena, CA 91030<br>(626) 799-9797 - Telephone | agreement for the Event, the means and methods necessary to lawfully obtain the signal to exhibit the Event, and the damages suffered by Plaintiff.  Mr. Riley may testify regarding the Auditor's Affidavit and applicable License Agreement for the Event. Mr. Riley is the Attorney-In-Fact for J&J Sports Productions, Inc. and custodian of records for J&J Sports Productions, Inc. Mr. Riley may testify to supplement or clarify his prior testimony. *See Declaration of Thomas P. Riley* Exhibit "2" [Doc. 23-2]. |   |
| 5. | Andrew R. Korn<br>David M. Diaz<br>c/o The Korn Diaz Firm<br>4221 Avondale Ave.<br>Dallas, Texas 75219<br>214-521-8800 | Mr. Korn or Mr. Diaz may testify regarding reasonable and necessary attorneys' fees for the prosecution of Plaintiff's claims and the basis for the same. | 30 min. |
| 6. | Plaintiff reserves the right to call any witnesses listed by Defendant. |   |   |

DEFENDANTS:

| NO. | WITNESS AND ADDRESS / TELEPHONE | NARRATIVE | ESTIMATED DURATION |
|---|---|---|---|
| 1. | Tiffaney Small | | 1 hour |
| 2. | Thomas P. Riley | . | 1.5 hours |
| 3. | Andrew R. Korn | | 1 hour |
| 4. | Defendants reserve the right to call any witness listed by Plaintiff. | | |

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

12. SETTLEMENT

Plaintiff has continually made settlement overtures and offers, the last one on December 19, 2018. Despite this, the parties are not close to any settlement or compromise.

Defendants have received Plaintiff's settlement demands and responded to all but the last one as it merely repeated a previous demand. Defendants maintain that Plaintiff's settlement offers are not based on the facts of this matter but instead are designed to reap a windfall, a scenario that District Courts nationwide have recognized and commented on.

13. TRIAL

After conference with the Court, this Case was set for a one-day bench trial, on February 25, 2019.

13. ATTACHMENTS

JOINT PRETRIAL ORDER
n:\804170\JPTO

(i)   Plaintiff's Exhibit List
(ii)  Plaintiff's Proposed Findings of Fact and Conclusions of Law


SIGNED this ___**4**___ day of _____Jan_____, 2019.


DAVID HITTNER
United States District Judge



Approved:


Date: 1-2-19                              /s/ Andrew R. Korn
                                          Attorney-in-Charge, Plaintiff



Date: 1-2-19                              /s/ Trevor McCann
                                          Attorney-in-Charge, Defendants